ANNA S. RICHARDS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13869. Promulgated October 30, 1928.

*Walter E. Barton, Esq.*, for the petitioner.
*J. E. Marshall, Esq.*, for the respondent.

1280

1282

MURDOCK: Counsel for the respondent at the hearing of the case, before any testimony was introduced by the petitioner, offered in evidence the petitioner's original and amended returns for the year 1920 and without making any formal motion to dismiss the case argued that the Board had no jurisdiction of the proceeding since the notice contained in the Commissioner's deficiency letter was one authorized by section 274 (f) of the Revenue Act of 1926, which states, in part, as follows:

* * * If the taxpayer is notified that, on account of a mathematical error appearing upon the face of the return, an amount of tax in excess of that shown upon the return is due, and that an assessment of the tax has been or will be made on the basis of what would have been the correct amount of tax but for the mathematical error, such notice shall not be considered, for the purposes of this subdivision or of subdivision (a) of this section, or of subdivision (d) of section 284, as a notice of a deficiency, and the taxpayer shall have no right to file a petition with the Board based on such notice, nor shall such assessment or collection be prohibited by the provisions of subdivision (a) of this section.

An examination of the petitioner's amended return for the taxable year shows a mathematical error in the computation of the net income which, if corrected, would show the total tax due to be the same amount as that determined by the Commissioner.

Section 274 (a) of the Act of 1926 provides that no assessment shall be made until 60 days after the notice of deficiency is mailed, while subdivision (f), quoted above, provides for a special notice, distinguished from the deficiency notice, which may be sent where there is merely a mathematical error and provides further that if such a notice is sent it shall not be considered a notice of deficiency and the taxpayer shall have no right to appeal therefrom. A careful consideration of this provision convinces us that it was intended to cover only a certain kind of notice, namely one which expressly advises the taxpayer that there is merely a mathematical error in his computation so that this notice can be distinguished from the general deficiency notice.

The notice which was sent in this case does not contain such advice and differs in no respect from the usual deficiency notice. It states in part:

* * * It is necessary at this time in order to protect the interests of the Government, either to make an immediate assessment under the provisions of

Section 274 (d) of the Revenue Act of 1924 or to issue a formal notice of deficiency. Therefore the Bureau has elected to issue this notice of deficiency believing it will be more satisfactory than an immediate assessment.

Indeed the notice was sent before the Act of 1926 was approved, and, therefore, in addition to its being a notice not sent under the provisions of the Act, the Commissioner could presumably at that time have had no knowledge that such a special or unusual notice could or should be mailed. Further, it is alleged and admitted in the pleadings that the notice in question was sent pursuant to section 274 (a) of the Revenue Act of 1924, which, if true, precludes the possibility of its having been sent under the provisions of section 274 (f) of the Revenue Act of 1926 and precludes the possibility of its being a notice contemplated by the latter subdivision. We therefore find that the Board has jurisdiction to determine the appeal in this case.

The petitioner has not introduced sufficient evidence concerning interest paid during the year and disallowed by the Commissioner to convince us of error on the part of the Commissioner in this respect.

The Commissioner has determined that the petitioner realized a profit of $100 a share on the sale of the common stock of the Ironton Portland Cement Co. in 1920 at a price of $200 a share. His determination in this respect is of course *prima facie* correct. The petitioner contends that a portion of this stock amounting to 50 shares which she acquired by purchase prior to March 1, 1913, at $100 a share had a market value as of March 1, 1913, of $200, and that another portion of 118 shares which she acquired from the estate of her father on December 4, 1918, had a market value as of that date of the same amount, and that, therefore, as to these 168 shares she received no profit upon their sale. To meet the burden of proving this value she has offered in evidence copies of the corporate balance sheets showing a surplus as of December 31, 1912, and December 31, 1918, together with testimony that these balance sheets did not contain any values for a right of way, certain gas wells discovered in 1911, and certain limestone deposits, discovered in 1912 and mined in 1913 and succeeding years, of a more marketable character than the limestone previously used. She has computed certain values for these items which she adds to surplus, and allocating all such surplus to the common stock, since the preferred stock was redeemable at par, by this method finds a value for the common stock of $218.75 a share as of March 1, 1913, and $276.04 as of December 4, 1913.

We are here concerned not with book value but with market value. The two are not synonomous. See *D. W. Cowden*, 3 B. T. A. 816, 821. Whether or not the right of way, gas wells and limestone deposits were worth the value ascribed to them by the petitioner, an addition

of such values to the balance sheets of the corporation does not effectively dispose of the question of market value.

The petitioner has not told us the amount of the company's yearly earnings at any time, the amounts of dividends paid upon the common stock, or whether dividends were paid at any time. There is no testimony as to the value of accounts receivable and other assets contained in the copies of the balance sheets. Proof of these facts, together with any others which might influence a prospective buyer and seller in arriving at a price, would have aided us in making an intelligent appraisal of the market value of stock such as this, which is not subject to market quotations. On the other side we have the Commissioner's determination strengthened first by evidence of small sales of the common stock at different times never above par and at a figure as low as $75 a share, and further strengthened as to the 118 shares which the petitioner acquired from her father's estate by the fact that these very shares which the petitioner now contends had a value of at least $200 a share were at the time of acquisition appraised for Federal estate-tax purposes at $100 a share, the value determined by the Commissioner.

While isolated sales do not of themselves establish market value, in this case they corroborate the value determined by the Commissioner, and we are of the opinion that the evidence offered by the petitioner is insufficient to overcome the Commissioner's determination.

*Judgment will be entered for the respondent.*