### FROST et al. v. UNITED STATES.

### No. 12272.

Circuit Court of Appeals, Fifth Circuit.

June 25, 1948.

As Modified on Denial of Rehearing
Sept. 1, 1948.

Elmo P. Lee, Jr., of Shreveport, La., for appellants.

Leland T. Atherton, Sp. Asst. to the Atty. Gen., Theron L. Caudle, Asst. Atty. Gen., and Malcolm E. Lafargue, U.S. Atty., and Wm. J. Fleniken, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before HUTCHESON, McCORD, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

The facts in this case—fully stated in the opinion of the lower Court in 71 F.Supp. 793—relate to the recoverability of income taxes paid by appellants as owners of 9,105 shares of stock in Frost Lumber Industries, Inc., a corporation under the laws of Mis-

souri. Each appellant in the tax year 1940 received the sum of $45,501 as dividends paid by the corporation out of earnings that came from two wholly-owned subsidiaries of Frost Lumber Industries, Inc., the parent corporation. Those subsidiaries were the Union Saw Mill Company, an Arkansas corporation, and Frost Lumber Industries, Inc., of Texas, a Texas corporation. Frost Lumber Industries, Inc., the Missouri corporation, will be referred to hereinafter as "the Missouri company" or as "the parent company". The two subsidiaries will be referred to as "the Arkansas company" and "the Texas company", respectively.

The Missouri company sold the products, collected the proceeds, paid the bills, kept the books, and retained the profits of its two subsidiaries, but it is here insisted that these profits in the tax year were applied to indebtednesses owed to it by its subsidiaries.

The main question is whether or not the monies so received from the Arkansas and Texas companies should now be treated as income to the parent company or as payments on such alleged indebtedness and, therefore, only untaxable capital in the tax year. In short, the issue was whether or not some 37% of the total dividends of the parent corporation to these taxpayers was attributable to, and distributed as, capital, as contended by the taxpayer, or whether only the sum of 9% of the dividends should be so considered and apportioned, as contended by the Commissioner.

Prior to the first of 1936 all of the products of the subsidiaries were sold, the proceeds collected and kept, and the debts paid, by the Missouri Company. The affairs of the three corporations seem to have been treated as if the operations were those of the parent company doing business in its own name and also as Union Saw Mill Company and as Frost Lumber Industries, Inc., of Texas. But in 1940, at the suggestion of accountant Maguire, this system was changed and separate books of account were set up. Prior to this event the parent company not only took the gains but also paid the losses of its subsidiaries; thereafter it continued to sell their products and to keep the books and the proceeds, but the

subsidiaries were entitled to be credited with the profits against the alleged indebtedness, which had been computed, or arrived at, by the accountant in 1940.

The appellants contend that of the sums belonging to the subsidiaries that the parent company retained and distributed as dividends to them, 37% were payments upon the indebtedness of the subsidiaries to the parent, and being only a return of capital were not taxable as income.

Without doubt there were three separate corporations, each operated by separate managers, each legally qualified to operate as a separate entity, with its own assets and liabilities, its own profits and losses, its own responsibility to creditors and stockholders, but admittedly both had been "tied to their mother's apron strings" for many years. Before 1936 the mother had paid their debts and had taken their earnings as her own, and after 1940 she continued to receive and retain all their net earnings as theretofore. It is true that the accountant testified that in the new system of accounting inaugurated in 1940 large sums were computed in some manner and set up as the indebtedness of each subsidiary to the parent, but the amount of the original indebtedness was not proven, the balance due was not proven, and the books were not introduced. The stipulation filed in evidence contains no statement as to the amount of the indebtedness due by the subsidiaries nor as to how the funds received by the parent from the subsidiaries were applied or were to have been applied.

 The appellant, E. A. Frost, was president of the parent company, and in the light of this course of business through the years, it was incumbent upon him to establish clearly the actual existence of the indebtedness and the fact that the earnings of the subsidiaries in the tax year were applied to the payment of such indebtedness to the parent corporation. This burden was on the appellants.

The Court below made the following apt and correct statement:

"In order to constitute payments upon account, it was necessary, first, that such indebtedness be established with reasonable certainty, and second, that the monies arising from the sales of their products made by the parent, by agreement, express or implied, were credited thereon, and that they were not sufficient to leave any balance to be attributed to dividends upon the stock, all of which was owned by the Missouri Company. * * *."

*　*　*　*　*　*

"The burden was upon the plaintiffs in these cases to prove by a fair preponderance of the evidence that the refunds claimed were not due to the Government."

The question involved here is chiefly one of fact and we cannot say that the findings of fact by the Court below were clearly erroneous. Without being able so to hold, those findings and the judgment based thereon should, under Federal Rules of Civil Procedure, rule 52, 28 U.S.C.A. following section 723c, be, and the same are,

Affirmed.

### On Petition for Rehearing.

PER CURIAM.

The petition of appellants for rehearing in the above-styled and entitled cause is hereby denied, but the prior judgment of this court, affirming the judgment of the lower court, is hereby modified, and that judgment affirmed insofar as it relates to the tax period involved in this cause, but without prejudice to the right of the appellants to submit, in any future proceeding involving subsequent tax years, evidence to establish any remaining, or other, indebtedness of the subsidiary corporations to the present corporation.