**F. B. BLANSETT and Ethel Blansett,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 608.**

United States District Court
W. D. Missouri,
Central Division.

Feb. 15, 1960.

W. H. Becker, E. Massey Watson, Columbia, Mo., for plaintiffs.

Edward L. Scheufler, U. S. Atty., Horace Warren Kimbrell, Asst. U. S. Atty., Kansas City, Mo., Howard A. Heffron, Acting Asst. Atty. Gen., James P. Garland, Lyle M. Turner, William F. Kolbe, Attys., Dept. of Justice, Washington, D. C., for defendant.

RIDGE, Chief Judge.

This is an action brought by the plaintiffs for refund of income taxes paid for the calendar year 1948, in the amount of $9,258.14, plus interest.

The ultimate facts giving rise to such claims are for the most part not in dispute. The issues for determination in this case are as follows:

(1) Is the assessment of the tax in question void because it was made under Section 272(a), I.R.C.1939, 26 U.S.C.A. § 272(a), without sending taxpayers a statutory 90-day notice of deficiency and in reliance by the Commissioner upon a written Waiver Form No. 870, which had been revoked by the taxpayers prior to the date of the assessment?

(2) Can the assessment here challenged be sustained under authority granted the Commissioner by Sections 3780(b) and (c), 26 U.S.C.A. § 3780(b, c), and 272(f), I.R.C.1939?

(3) Assuming the challenged assessment was procedurally improperly made, may the taxpayers recover the amount paid in satisfaction of this assessment, without proving that said sum represents payment in excess of their true tax liability for the calendar year 1948?

In respect to the above issues, the Court finds the facts to be as stipulated by the parties and, in addition thereto, as hereinafter noted.

Facts Stipulated:

I

The plaintiffs (hereinafter sometimes referred to as "taxpayers") at all times mentioned herein were, and are now, citizens of the State of Missouri, residing in Fulton, Callaway County, Missouri.

II

This action is brought to recover the sum of $9,258.14, with interest thereon as allowed by law, which taxpayers claim was erroneously and illegally assessed against them as income taxes for calendar year 1948, the amount thereof having been paid by taxpayers to the District Director of Internal Revenue, St. Louis, Missouri, on September 30, 1954, without prejudice to plaintiffs' right to claim refund, or to contest the validity or legality of the tax assessments.

III

Taxpayers' joint federal income tax return for calendar year 1948, filed with the then Collector of Internal Revenue at St. Louis, Missouri, showed taxable net income in the sum of $20,534.94, and a total tax thereon in the sum of $3,114.-50.

IV

Taxpayers' joint federal income tax return for calendar year 1949, filed with the then Collector of Internal Revenue at St. Louis, Missouri, showed no taxable net income for said taxable period, and a net operating loss from business and nonbusiness operations in the sum of $29,553.83. Taxpayers' amended joint federal income tax return for calendar year 1949 showed an increase in the claimed net operating loss from the aforesaid amount to the sum of $31,071.-41.

V

During the calendar year 1950, an internal revenue agent for the then First Collection District of Missouri inspected and audited taxpayers' joint federal income tax return for calendar year 1948, in consequence of which, in a report dated April 17, 1950, said agent proposed to adjust taxpayers' taxable net income for said taxable period by increasing it from the sum of $20,534.94 to the sum of $43,072.96, and upon the basis of such increase, to assert an income tax deficiency against taxpayers for calendar year 1948 in the sum of $9,097.44.

## VI

This proposed deficiency for the year 1948, in the amount of $9,097.44 was the subject of a Treasury Department Form 870, executed by the taxpayers in 1950 consenting to the assessment of this amount without regard to the restrictions imposed by Section 272(a), Internal Revenue Code of 1939. A photostatic copy of this Form 870 is attached hereto and marked Exhibit A.

## VII

This deficiency for the year 1948, in the amount of $9,097.44, plus accrued interest in the amount of $597.31, was assessed by the Commissioner of Internal Revenue in June, 1950.

## VIII

The aforesaid assessment for calendar year 1948 was partially abated in 1950 by tentative allowance of claimed carryback adjustment based on a net operating loss claimed by taxpayers to have been sustained by them in calendar year 1949. This net operating loss was first carried back to calendar year 1947 and offset against plaintiff F. B. Blansett's taxable net income for that year, resulting in elimination thereof. The excess thereof over plaintiff F. B. Blansett's taxable net income for 1947 was then deducted from taxpayers' taxable net income for calendar year 1948, including the aforesaid proposed increase therein, resulting in the aforesaid partial abatement (in the sum of $7,488.32).

## IX

In calendar year 1952, the aforesaid revenue agent reinspected and reaudited taxpayers' joint federal income tax return for the calendar year 1948, and inspected and audited taxpayers' joint federal income tax returns for 1949 and 1950, and, in a report dated September 9, 1952, disallowed and eliminated all of the net operating loss claimed for the calendar year 1949 and the aforesaid tentative allowance of the carryback adjustments based thereon and resulting aforementioned abatement, stating as his reason "lack of substantiation" and a net worth analysis he made of the taxpayers' income for the periods in question. A copy of said report is attached hereto as Exhibit B.

## X

In consequence of the disallowance of the tentative carryback adjustment for 1948 based on the claimed net operating loss for calendar year 1949, said revenue agent, in said audit report, proposed a deficiency in taxpayers' federal income tax for calendar year 1948 in the sum of $7,488.32, the amount previously abated in 1950.

## XI

Taxpayers' Federal Income Tax Returns for the taxable years involved herein were prepared by an accountant who had been retained by plaintiff F. B. Blansett for many years to keep monthly ledgers, to audit his books, and to prepare and file, when required, federal and state income tax returns and other tax returns on behalf of taxpayers and of plaintiff F. B. Blansett's various business enterprises.

## XII

Thereafter, said accountant delivered to taxpayers waiver forms (Forms 870) relating to the calendar year 1948, which set forth the proposed deficiency for that year. The taxpayers signed the waiver forms applicable to calendar year 1948.

## XIII

Said accountant delivered said waivers to the aforesaid revenue agent, who forwarded them with his audit and report of September 9, 1952, to the office of the Internal Revenue Agent-in-Charge at the St. Louis Division of the Internal Revenue Service in St. Louis, Missouri.

## XIV

On September 25, 1952, said Agent-in-Charge forwarded said waiver forms, together with the aforesaid audit report of September 9, 1952, to the Commissioner of Internal Revenue in Washington, D. C. for his consideration and acceptance.

## XV

Thereafter, on October 18, 1952, the taxpayers, acting through their attorney, wrote to the Internal Revenue Agent-in-Charge of the St. Louis Division of the Internal Revenue Service at St. Louis, Missouri, and told him that they wished to revoke the Forms 870 previously mentioned, and further that they intended to protest against the proposed deficiency for the year 1948. This letter, purporting to revoke said Forms 870 was received at the office of the aforementioned Internal Revenue Agent-in-Charge on October 20, 1952. A photostatic copy of said letter, with the date of receipt by said Revenue Agent-in-Charge stamped thereon, is attached hereto as Exhibit C.

## XVI

On October 23, 1952, taxpayers' attorney, acting by and with their authority and in their behalf, personally conferred with the said Internal Revenue Agent-in-Charge in St. Louis, respecting said waiver and its purported revocation and return, at which time said attorney filed a written protest. A copy of said protest is attached hereto and marked Exhibit D.

## XVII

At the aforesaid conference, said Internal Revenue Agent-in-Charge informed taxpayers' attorney that his office would not consider the issues raised by their written protest filed at that time, or have a hearing thereon, unless and until the Commissioner of Internal Revenue had taken favorable action respecting taxpayers' request for revocation and return of the aforesaid waiver forms.

## XVIII

Thereafter, taxpayers' attorney received a letter from said Agent-in-Charge, dated October 23, 1952. A copy of said letter is attached hereto and marked Exhibit E.

## XIX

On October 4, (sic) 1952, assessment of the aforesaid deficiency for 1948 was made by the Commissioner of Internal Revenue in Washington, D. C., acting through his subordinates in the Bureau of Internal Revenue. A copy of the original assessment certificate and list showing such assessment, the date and amount thereof, and the authority in law under which made, is attached hereto and marked Exhibit F.

## XX

By letter dated November 3, 1952, taxpayers were notified by the acting Internal Revenue Agent-in-Charge of the St. Louis division of the Internal Revenue Service that by virtue of said assessment of the proposed deficiency for 1948, his office would be unable to consider or have a hearing on the issues raised in the aforesaid protest, and that taxpayers, as a consequence of said assessment, would be required to pay the proposed deficiency which was the subject of said assessment and seek further relief by the filing of a timely claim for refund. A copy of said letter is attached hereto and marked Exhibit G.

## XXI

On December 5, 1952, taxpayers filed a written petition with the District Commissioner of Internal Revenue for the St. Louis District requesting the setting aside and rescission of the aforesaid assessment and the granting to taxpayers of the opportunity to have their income tax liability, if any, for the calendar year 1948, determined in accordance with the administrative procedures customarily and ordinarily provided to taxpayers when the Revenue Service does not contend that they have waived the provisions of Section 272(a), Internal Revenue Code of 1939 or that these restrictions are not applicable. A copy of said petition is attached hereto and marked Exhibit H.

## XXII

On December 23, 1952, taxpayers, by and through their attorney, mailed a copy of the aforesaid petition to the Commissioner of Internal Revenue, Washington, D. C., and in an accompanying letter, requested that the Commissioner grant the relief prayed for in said

petition. A copy of this letter is attached hereto as Exhibit I.

## XXIII

By letter dated January 5, 1953, the Commissioner of Internal Revenue, acting through the Head of the Audit Division at his office, acknowledged receipt of taxpayers' letter of December 23, 1952, enclosing a copy of said petition, and notified taxpayers that he concurred in the aforesaid ruling of the District Commissioner of Internal Revenue, dated December 8, 1952, for the reasons set forth in said letter. A copy of this letter is attached and marked Exhibit J.

## XXIV

On or about February 14, 1953, taxpayers filed with the District Director of Internal Revenue, St. Louis, an offer of compromise with respect to said deficiency assessment upon which installment payments were made thereafter from time to time. This offer was conditional upon acceptance by the Commissioner of Internal Revenue, and the Internal Revenue Service, but was not accepted and was later revoked and withdrawn by the taxpayers.

## XXV

On or about February 20, 1953, the District Director of Internal Revenue, St. Louis, filed with the Recorder of Deeds of Audrain County and Callaway County, Missouri, and on or about March 3, 1953, he filed with the Recorder of Deeds of Montgomery County, Missouri, federal tax liens against the property of taxpayers situated in said counties in aid of and to secure the collection of said tax assessments.

## XXVI

On May 19, 1953, taxpayers brought a civil action (No. 9218(3)) in the United States District Court for the Eastern District of Missouri against Gus S. Koehler, Director of Internal Revenue, St. Louis, and N. B. Esheleman, District Director of Internal Revenue for the St. Louis District, to enjoin and restrain said defendants and their agents, servants, employees and subordinates from collection of the aforesaid deficiency assessment and for a declaratory judgment with respect to the issues raised thereby.

## XXVII

Thereafter, taxpayers filed a motion for a preliminary injunction in said action against the aforesaid defendants, and their agents, servants, employees, and subordinates, to restrain and enjoin them from taking any further action to collect said deficiency assessment pending final determination of the issues raised in said action, and defendants filed a motion to dismiss taxpayers' complaint. Defendants' motion to dismiss was denied and plaintiffs' motion for preliminary injunction was granted.

## XXVIII

On July 13, 1954, the defendants in the aforesaid civil action filed notice of appeal to the United States Court of Appeals for the Eighth Circuit from the order of said Court granting taxpayers' motion for a preliminary injunction, and overruling defendants' motion to dismiss.

## XXIX

By letter dated August 27, 1954, taxpayers notified the District Director of Internal Revenue, St. Louis, and the Commissioner of Internal Revenue, Washington, D. C. of their withdrawal and revocation, as of September 15, 1954, of the aforesaid offer in compromise, which had not been accepted by the United States Treasury Department, the Commissioner of Internal Revenue nor any of his subordinates in the Internal Revenue Service, nor by any official, agent, representative, or employee of the United States Government. A copy of said letter is attached hereto and marked Exhibit K.

## XXX

In order to satisfy and discharge the aforesaid tax liens which were hindering their business activities, the taxpayers, on October 5, 1954, paid the aforesaid assessment together with the interest thereon to the then District Director of Internal Revenue, St. Louis, without

prejudice to their rights to claim and sue for a refund.

### XXXI

Thereafter, on November 8, 1954, the United States District Court for the Eastern District of Missouri, Eastern Division, pursuant to taxpayers' motion filed in the aforesaid civil action, dismissed this action without prejudice to taxpayers' right to claim refund or to contest the validity or legality of the aforesaid tax assessment. A copy of the order of dismissal is incorporated in Exhibit L.

### XXXII

On December 20, 1955, taxpayers mailed a claim for refund with respect to the sum of $9,258.14 paid in satisfaction of the assessment for the calendar year 1948 and for discharge of said federal tax liens relating to said assessment; this claim for refund was received by the District Director of Internal Revenue on December 23, 1955. A photostatic copy of said claim for refund is attached hereto and marked Exhibit M.

### XXXIII

On or about July 27, 1956, the taxpayers were informally notified in writing by the Appellate Division of the Omaha Region of the Internal Revenue Service of disallowance in full of the aforesaid claim for refund of the amount paid on the aforesaid assessment for the taxable period in question; and the statutory notice of disallowance of said claim for refund was issued to the taxpayer by registered mail on October 4, 1956. A copy of said notice of disallowance is attached hereto and marked Exhibit N.

### XXXIV

Refund has been made to plaintiff F. B. Blansett in the sum of $1,640.80, by United States Treasury check dated July 26, 1956, representing the amount of the deficiency assessment against him for calendar year 1947, interest thereon to September 30, 1954 (the date of his payment of said assessment and interest thereon), and interest on the amount paid on said assessment to the date of refund. In consequence of said refund, said plaintiff's federal income tax liability for the year 1947 is not at issue in this action, anything to the contrary in the complaint herein notwithstanding, and said plaintiff is not entitled to refund in this action of any amount of federal income tax for calendar year 1947.

### XXXV

The amount of $349.68, representing the federal income tax liability shown on plaintiff F. B. Blansett's federal income tax return for calendar year 1947 and paid with the filing thereof, was subsequently credited against taxpayers' 1948 federal income tax liability by virtue of the elimination of plaintiff F. B. Blansett's liability for 1947 federal income tax resulting from the tentative carryback adjustment based on a net operating loss claimed by taxpayers for calendar year 1949 (see paragraph VIII hereinabove.) Said amount was thereafter included in the total of the deficiency assessed against plaintiff F. B. Blansett for calendar year 1947, was included in the payment of said deficiency assessment by said plaintiff on September 30, 1954, and was included in the amount refunded to said plaintiff by United States Treasury check dated July 26, 1956, for calendar year 1947. Said amount is not at issue in this action, anything to the contrary in the complaint herein notwithstanding, and plaintiff F. B. Blansett is not entitled to refund of all or any portion thereof.

### XXXVI

At all times mentioned herein, there was a genuine and bona fide controversy and dispute between the taxpayers and the Treasury Department, the Internal Revenue Bureau, the Internal Revenue Service, and various officials and employees thereof, all acting in good faith, with respect to the alleged additional tax liability for calendar year 1948.

### XXXVII

The merits of the dispute and controversy between taxpayers and the Treasury Department, Internal Revenue Bu-

reau, Internal Revenue Service, and various officials and employees thereof, with respect to taxpayers' 1948 income tax liability are not at issue in this action.

### XXXVIII

Each of the parties hereto reserve the right to offer evidence not in conflict with this stipulation of facts, subject to objections for immateriality, incompetency, and irrelevancy.

### XXXIX

After the filing of the claim for refund mentioned in paragraph XXXV, and of the claim for refund of F. B. Blansett for 1947 in the sum of $1,485.90 (filed at the same time as taxpayers' claim for refund for 1948), the Internal Revenue Service reaudited the taxpayers' returns and account for 1947 and 1948 and issued reports thereon, hereto attached and marked Exhibits O and P. As a result thereof, a check was issued refunding to taxpayers all taxes for 1947 claimed in this action. Said check was paid and received after the filing of this suit without prejudice to the taxpayers' claim for refund of taxes for 1948.

(Exhibits referred to in the stipulation of the parties bear corresponding identification markings in the record made at pre-trial and trial on the merits.)

Reasoning and Declaration of Law as to Issue No. 1, Supra.

▆ A determination of this issue is simplified by the recent decision of the Supreme Court of the United States in the case of United States v. Price, 80 S. Ct. 326. In the Price case the Supreme Court ruled "that a waiver given pursuant to § 272(d) of the Internal Revenue Code of 1939 or its predecessor sections, although executed prior to the issuance of a notice of deficiency, is a fully effective instrument" (80 S.Ct. 332). That opinion effectively disposes of plaintiffs' contention that the "870 Form" executed by them in 1952 (S.F. VI) was void because no "statutory notice of deficiency" as required by Section 272(a)

I.R.C.1939, was given plaintiffs before such document was admittedly executed by them.

▆ As to plaintiffs' contention that the 870 Waiver Form executed by them in September, 1952 (S.F. XII) was revoked (S.F. XV and XVI) prior to the assessment made on October 24, 1952, the Court declares the law to be:

Until acted upon by the Commissioner, by making a deficiency assessment pursuant to Section 272(a), I.R.C.1939, "taxpayers" had the legal right to revoke such "870" Waiver Form; and, the notice of intent to so revoke, delivered by plaintiffs to the Agent-in-Charge at St. Louis, Missouri, on October 18, 1952, was a legally effective revocation of such 870 Waiver Form, so that no legal deficiency assessment could be made in reliance thereon after October 18, 1952. T.R. 118, Sec. 29.272–1(f); Moore v. Cleveland R. Co., 6 Cir., 1940, 108 F.2d 656; Roos v. United States, 1940, 31 F.Supp. 144, 90 Ct.Cl. 482.

Reasoning and Declaration of Law as to Issue No. 2, Supra.

▆ Plaintiffs' claim of right to refund is presented to the Court as one having many primary and subordinate questions of fact and law. It is not deemed necessary for the Court to follow plaintiffs in all the labyrinthian avenues that they relate those questions, in their briefs, to the instant issue. Suffice to say, the claim for refund here made is premised in these tersely stated facts: On September 9, 1952, a reaudit of plaintiffs' 1948, 1949 and 1950 income tax returns was made by the Commissioner of Internal Revenue. As a consequence of that reaudit, a 1949 claimed net operating loss carryback, tentatively allowed in 1950 and then carried back to plaintiffs' 1947 and 1948 tax liability, was disallowed for "lack of substantiation." No change was made by that reaudit as to plaintiffs' 1949 and 1950 tax liability to the Government. But, the disallowance and elimination of the claimed operating loss carryback for 1949, called for an adjustment to be made as to the pay-

ment of plaintiffs' admitted tax liability to the Government for 1947 and 1948. Hence the challenged assessment of October 24, 1952, is one "based entirely on disallowance of the 1949 net operating loss and carryback" (Plfs.' Br., p. 4) and is *not* related to the items of income and deduction upon which a 1950 deficiency assessment was based and made with plaintiffs' consent for the calendar year 1948 (an 870 Waiver); nor is plaintiffs' original true tax liability to the Government for 1948, so lawfully assessed, challenged by plaintiffs.

(A portion of the carryback was tentatively credited to plaintiffs' tax liability for the calendar year 1947. Subsequent transactions respecting the carryback credited to that year (1947) and dealings later had by the parties, were effected in such a manner that no further dispute exists between them in respect to the plaintiffs' income tax liability for the calendar year 1947. Hence no further consideration need be given to the claim asserted by plaintiffs for refund in the calendar year 1947 in this case. (Stip. of Facts XXXIV, XXXV and XXXIX, supra.))

There is a question here as to the technical compliance by the Commissioner with applicable sections of the Internal Revenue Code, in making the instant assessment. From the evidence adduced, it is established that the challenged assessment was procedurally made by improper reliance of the Commissioner on the provisions of Section 272(a) of the 1939 I.R.C. and an "870 Waiver" of the restrictions on assessments imposed by that section, executed by plaintiffs on September 9, 1952, but later revoked, on October 18, 1952, prior to the time the assessment here considered was actually made. It is here noted that in the opinion of this Court such finding and ruling does not, standing alone, make the assessment here involved illegal, but at most one merely erroneously assessed.

"An erroneous assessment is one which the (Commissioner) has jurisdiction to assess, but errs in his judgment; an illegal assessment is one in which the (Commissioner) acts without authority in law, or, in other words, without jurisdiction." 84 C.J.S., Taxation § 391, p. 749.

The challenged assessment is not illegal, as will be presently established.

So, the question now is: Can the Government, under the circumstances here shown, be permitted to reverse the procedural position followed by the Commissioner of Internal Revenue, and assume to rely on other provisions of the 1939 I.R.C., in effect at the time the challenged assessment was made, but as to which there is no evidence the Commissioner had in mind when the assessment was made, so as to sustain the validity thereof? We think it can, if it is found under the circumstances here that what the Commissioner did in respect to such assessment substantially complied with procedure authorized by the Code, essential to a valid assessment; and if it is further found that plaintiffs have not and cannot suffer any damage or injury by such a change of position. This, for the following reasons:

(a) In their briefs, plaintiffs concede that when the October 24, 1952 deficiency was proposed (Ex. B, and S.F. IX, X) as to their 1948 tax liability, as a result of the reaudit and then disallowance of the carryback in question, a valid deficiency "assessment" could then have been made by the Commissioner, "in accordance with the provisions of the Internal Revenue Code governing such assessment, (if) the Commissioner (had) either * * * (1) sen(t) the taxpayers a 90-day letter (statutory notice of deficiency) before making the assessment, thus affording them an opportunity to litigate the disputed issues with the Tax Court; or (2) obtain(ed) a waiver of the restrictions on assessment imposed by Section 272(a), and assess the tax pursuant to such waiver before it was revoked; or (3) ma(d)e the assessment pursuant to and in accordance with Sections 3780(c) and 272(f), I.R.C.1939 and, either before or after such assessment, notif(ied) the taxpayers that he had or would make such assessment pursuant to those sec-

tions" (Plfs.' reply br., pp. 4 and 5; parentheses added);

(b) The final disallowance of a tentatively allowed "net operating loss carryback" is not the assessment of an additional tax, in the ordinary sense, as intended by Congress to be exclusively covered by Section 272(a) of the I.R.C.1939 and on 870 Waiver Form, but is a determination made by the Commissioner "that the amount applied, credited or refunded" and attributable to the carryback should not have been made on the separate application of the taxpayer, and an alternative assessment made in respect thereto under 3780(b) and (c), and 272(a), supra. In such cases, the disallowance of a carryback, in whole or in part, does not change or require the taxpayer to pay other than his admitted tax liability to the Government for the years involved *sans* the benefit from a carryback. To compel that result, no harm or injustice is done to a "taxpayer" as he is afforded the right of review as to the merits of the disallowance of the carryback in the District Courts. It is specifically noted that no such review on that issue is here sought or developed by these taxpayers.

Although there is some question here as to the technical compliance by the Commissioner with the mandates of Sections 3780(c) and 272(f), supra, yet a summary of what the Commissioner actually did regarding the instant assessment, when coupled with the fact that plaintiffs do not dispute the merits thereof or extent of their original 1948 tax liability to the Government, and concede that the Commissioner had authority to make this assessment under the above statute when it was first assessed, clearly demonstrates that this assessment is only erroneously made, and that the Commissioner can be found to have substantially complied with the above sections of the Code in making the instant assessment; and, plaintiffs are in no position to contend otherwise.

Section 272(f), construed in relation to Section 3780(c), I.R.C.1939, provided that a deficiency assessment could be made thereunder where a special notice (as distinguished from an ordinary deficiency notice, such as a 90-day letter) was sent to a taxpayer, either before or after the assessment was made. And, further, that if such a notice is sent it shall be considered a notice of deficiency. In Richards v. Commissioner, 13 B.T.A. 1279, loc. cit. 1282, the Board said:

"A careful consideration of this provision convinces us that it was intended to cover only a certain kind of notice, namely one which expressly advises a taxpayer that there is merely a mathematical error in his computation so that this notice can be distinguished from the general deficiency notice."

As to the disallowance of carrybacks, Section 3780(c) of the Code of 1939 provided:

"If the Commissioner determines that the amount applied, credited or refunded under subsection (b) is in excess of the overassessment attributable to the carry-back with respect to which such amount was applied, credited or refunded, he may assess the amount of the excess as a deficiency as if it were due to a mathematical error appearing on the face of the return, as provided in section 272(f). Upon making such assessment, the Commissioner shall schedule as an overassessment the decrease in any other tax resulting from the adjustment reflected in the computation of the deficiency."

Notwithstanding the fact that Treasury Regulations may provide that a certain kind of form notice be given to sustain such an assessment, (a matter as to which the Court has not been advised by either party) when the provisions of Section 272(f), supra, are considered with the provisions of Section 3780(c), supra, it clearly appears that the kind of notice that should be given to a taxpayer where a tentative allowance of carryback is later disallowed, resulting in a deficiency in respect to a given taxable year as to which the carryback has been tentatively applied, the notice should ad-

vise the taxpayer that the tentative claimed carryback adjustment has been eliminated and as a consequence thereof the tax to which it was previously applied is thereby determined by the Commissioner to be a presently existing tax liability of the taxpayer, and the amount of such tax, with interest.

When such a notice is given and an assessment is so made, the taxpayer has no right to appeal the Commissioner's ruling on that kind of a deficiency assessment to the Tax Court. (Plaintiffs' contention that they were injured because deprived of such an appeal to the Tax Court is without merit if this assessment is sustained under the above-mentioned sections of the I.R.C.1939.) A "taxpayer" does, however, in such a case have a right to bring an injunction action to restrain the Commissioner's elimination of the tentative carryback adjustment (such as plaintiffs did regarding the instant assessment, but later dismissed); or, he may pay the amount of tax (as plaintiffs have here done "attributable to the carry-back with respect to which such amount was *applied, credited* or *refunded*," (3780(c)) and then bring an action in the District Court for a refund thereof. In each such instance, however, the issue is in respect to the merits of disallowance of the claimed net operating loss carryback, and only incidentally the right of the taxpayer to have the operating loss carryback "applied" or "credited" or "refunded" for the year or years attributable to the claimed carryback.

Plaintiffs' Exhibit B, a Treasury Regulation Form 892 letter, dated September 25, 1952, addressed to and admittedly received by plaintiffs, informed them of a deficiency in respect to their 1948 income tax liability, as a consequence of a "Report of Examination" made of their 1948, 1949 and 1950 income tax returns, that "the principal cause of the (deficiency and) change in (their) tax liability (was) elimination of net operating loss carryback from the year 1949"; that "the net operating loss for the year 1949 (was) disallowed as a carryback

for lack of substantiation"; and, that the "Collector will present to you at an early date a bill for payment of the tax, together with interest," assessed as a consequence of such deficiency finding. (Letter, Ex. B, supra, and enclosures attached thereto; parentheses added.) Exhibit B, supra, clearly reveals that the Commissioner was led to that determination because of the above recitals and that plaintiffs were assessed deficiency of $7,488.32 as a result thereof; and also that "the changes were discussed with R. A. Hebert (plaintiffs' auditor) who agrees therewith." (Parentheses added.) The "important features" of the elimination of net operating loss carryback for the year 1949 was therein noted as follows: "of the tax previously assessed for the year 1948, $7,488.32 was abated on a claim for tentative carryback adjustment." And that such tax was so assessed in the year 1950, pursuant to an "870 Waiver Agreement" executed by plaintiffs in that year. Thus, in 1952, before the instant deficiency assessment was made and finally approved by the Commissioner, notice was given to plaintiffs which fully informed them of the grounds of disallowance of the 1949 claimed operations loss carryback; the amount of tax to be readjusted as a consequence of the elimination of the tentative allowance thereof; the specific reason for such disallowance; and the amount of tax due. What more information and notice the Commissioner could have given plaintiffs regarding the instant deficiency assessment, regardless of the form of notice, to make this deficiency more legally assessed, is not demonstrated by plaintiffs or known by the Court.

Manifestly, the only purpose of a 272 (f), supra, notice in respect to the elimination of a claimed net operating loss carryback when related to Section 3780 (c), supra, was to give the taxpayer information in respect thereto as by way of a "mathematical error"; and, the amount of tax claimed to be due on account of, and the reason for, the disallowance or elimination of such carryback

claim. Even if it is assumed that the 1952 letter (Exhibit B) is not in form ordinarily used by the Commissioner to give taxpayers notice of elimination of a tentative carryback, yet the fact remains that plaintiffs were not injured by any such technical defect in the form of such letter. Plaintiffs were given full information in respect to the assessment here challenged and technical non-compliance by the Commissioner in failing to use any given Treasury Regulation Form directed to be given to a taxpayer in such a case cannot defeat this assessment or be held to have prejudiced the plaintiffs.

Furthermore, any non-compliance by the Commissioner to give plaintiffs any specific form of notice has been clearly waived by plaintiffs when they paid the amount of tax assessed against them as above. Plaintiffs assert that the filing of a jeopardy assessment against them in respect to the tax claim asserted, financially embarrassed them and they were thereby coerced into dismissing the injunction suit first instituted by them, and in paying such tax, and into bringing the instant action. Candidly, the Court cannot perceive any coercion or prejudice that has so resulted to the plaintiffs under the circumstances here established, that all other taxpayers might be subjected to, who may be similarly situated as plaintiffs. The Commissioner, by 273, I.R.C.1939, 26 U.S. C.A. § 273, was authorized by the Congress to effect jeopardy assessments, and the fact that the Commissioner reasonably acts as authorized by the Congress (cannot be considered coercive action.) Plaintiffs have not undertaken to demonstrate any other prejudice resulting to them than as above noted.

The Court declares the law to be, the assessment here challenged is legally sustained by Sections 3780(b) and (c), and 272(f), I.R.C.1939.

Reasoning and Declaration of Law as to Issue No. 2, Supra.

The parties have stipulated that "the merits of the dispute and controver-

sy between taxpayers and the Treasury Department * * * with respect to taxpayers' 1948 income tax liability are not at issue in this action." As noted above, plaintiffs raise the question that they were coerced into paying the taxes assessed but challenged by them, but do not demonstrate any coercive conduct on the part of the Government, except from the filing of a jeopardy assessment by the Commissioner.

In Lewis v. Reynolds, 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293, the Supreme Court laid down the rule that:

"An overpayment [of taxes] must appear before refund is authorized. Although the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded."

In Van Antwerp v. United States, 1937, 92 F.2d 871, the Ninth Circuit Court of Appeals denied refund where sought on the claimed ground of no liability because no statutory notice of deficiency was given as to the tax paid. The cases are legion that place the burden of proof upon the taxpayer to prove by a fair preponderance of the evidence that no part of the tax refund claimed is due the Government, (cf.) Frost v. United States, 5 Cir., 1948, 168 F.2d 705; and, that the taxpayer does not sustain such burden by merely showing that the Commissioner was wrong in his determination, but only sustains such burden of proof when they go further and establish the essential facts from which a correct determination of their liability can be made. Forbes v. Hassett, 1 Cir., 1942, 124 F.2d 925, and cases therein cited.

There is no merit to plaintiffs' claim that because of "abatement" of their 1948 deficiency by tentative allowance of a 1949 carryback, they thereafter had no further 1948 tax liability to the Government. Neither have they established any fact of coercion that might in equity re-

**648**

lieve them from the consequence of paying a tax legally due the Government.

The Court declares the law to be that "although the assessment here made was administratively procedurally improper, yet plaintiffs are not entitled to any refund of taxes paid as a consequence of such assessment, without proving that said sum, in whole or in part, represents payment in excess of their true tax liability to the Government for the calendar year 1948." This the plaintiffs have not done.

Therefore, on the issues here determined, plaintiffs' complaint must be, and the same is hereby, dismissed.

It is so ordered.