Cornelius J. Sullivan and Lillian Sullivan v. Commissioner.
Sullivan v. Commissioner
Docket No. 91719.
United States Tax Court
T.C. Memo 1963-264; 1963 Tax Ct. Memo LEXIS 77; 22 T.C.M. (CCH) 1331; T.C.M. (RIA) 63264; September 27, 1963
*77 1. Held, adjustments with respect to principal petitioner's proprietorship's opening inventory, and accounts receivable and payable, made by respondent acting pursuant to section 481, I.R.C. 1954, to prevent duplications and omissions, following petitioner's voluntary change in 1954 from the cash to a modified accrual method of accounting for and reporting proprietorship income, were proper. 2. Held, petitioner is not entitled to a bad debt deduction for an account receivable (which arose at the time petitioner's proprietorship was on the cash basis), the amount of which had never been included in income. 3. Held, petitioner is not entitled to deduct in 1957 as an expense of his proprietorship, the amount of a fee which he agreed to pay an accounting firm for reconstructing the proprietorship's accounting records, where petitioner's method of accounting was to treat all proprietorship expenses except purchases of materials on the cash basis and where no part of the accountant's fee was paid in 1957. 4. Held, petitioner has not established that the expense of a pilgrimage-tour which he made to Europe in 1957 was an ordinary and necessary business expense of his proprietorship. Respondent's *78 disallowance of deduction claimed therefor approved. 5. Held, petitioners have failed to establish that the late filing of their declaration of estimated tax for 1954 was due to reasonable cause. Additions to tax under section 294(d)(1)(A), I.R.C. 1939, in respect of such late filing, and under section 294(d)(2) for substantial underestimate of estimated tax were properly imposed. John M. Doukas, for the petitioners. Douglas D. Robertson, for the respondent. PIERCE Memorandum Findings of Fact and Opinion PIERCE, Judge: The respondent determined deficiencies in the income taxes of the petitioners, and additions to tax for late filing of declarations of estimated tax and for substantial underestimate of estimated tax, in amounts and for calendar years as follows: Additions to Tax
I.R.C. 1939
Sec. 294
Sec. 294
Year
Deficiency
(d)(1)(A)
(d)(2)
1954
$3,911.08
$1,125.61
$645.02
1955
770.60
None
None
1956
7,889.84
None
None
1957
6,638.40
None
None
The principal issue for decision is whether the respondent was justified under section 481 of the 1954 Code, in requiring certain adjustments to the proprietorship income of the husband-petitioner, [1] in order to prevent omissions and duplications of items of income and *79 deductions, where said petitioner changed from a cash to a modified accrual method of keeping his proprietorship books and records and reporting the proprietorship income for Federal income tax purposes in the year 1954. The remaining issues are: 1. Whether the petitioner is entitled to a bad debt deduction for 1954, in respect of an uncollected account receivable owing to the proprietorship by the Maynard Pulp Products, Inc. 2. Is the petitioner entitled to a deduction for legal and auditing expense of $12,500 for the year 1957? Said amount was not actually paid until several years later; and the respondent is contending that, for the year 1957, petitioner was accounting for the proprietorship expenses (other than for purchase of material) on a cash basis. 3. Is the petitioner entitled to deduct as an ordinary and necessary business expense of his proprietorship for the year 1957, the expenses he incurred in making a trip to Europe in that year? 4. Are the petitioners *80 liable for additions to tax for the year 1954, under sections 294(d)(1)(A) and 294(d)(2), Internal Revenue Code of 1939, [2] for late filing of their declaration of estimated tax and for substantial underestimate of estimated tax? Several other adjustments made by the respondent in his notice of deficiency and which were challenged in the petition, are deemed to have been abandoned, in the light of petitioners' failure to present evidence with respect thereto, or to present any argument regarding the same in their brief. Findings of Fact Petitioners Cornelius and Lillian Sullivan are husband and wife, with their residence in Holyoke, Massachusetts. For each of the taxable calendar years 1954 through 1957 here involved, they filed a joint Federal income tax return with the district director of internal revenue at Boston. During the *81 taxable years involved, petitioner was engaged as a sole proprietor, in a roofing, sheet metal, and welding business. Primarily, the proprietorship functioned as a subcontractor to general contractors on building construction jobs; and it also did some manufacturing of component parts, both for private industry, manufacturing concerns and for the United States Government. For 1953 and for prior years petitioner's proprietorship books and records had been kept on a cash receipts and disbursements basis; and he had reported his proprietorship income for Federal income tax purposes for 1953 and said prior years on a cash receipts and disbursements basis. For the year 1954, the first taxable year here involved, petitioner voluntarily and on his own initiative changed his method of keeping his proprietorship books of account and of reporting proprietorship income on his Federal income tax return. For said year 1954, petitioner used a modified accrual method of reporting the income of his proprietorship - i.e., he utilized the accrual method for purchases and sales and he used opening and closing inventories in computing cost of goods sold; but, as regards other proprietorship expense, he *82 continued to account for these on the cash method. Petitioner utilized an opening inventory of $19,175.50 in computing cost of goods sold in 1954 on the return for that year. Petitioner neither sought nor obtained the consent of the Commissioner of Internal Revenue to the above change. In 1956, the respondent for the first time audited the returns filed by the petitioners for the years 1953, 1954, and 1955; and on August 6, 1956, petitioners executed a Form 870, "Waiver of Restrictions of Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," wherein proposed deficiencies and additions to tax were set forth as follows: Additions
Year
Deficiency
to Tax *
1953
$3,145.76
1954
2,460.56
$1,518.70
1955
14.52 Before any action had been taken by the respondent pursuant to the foregoing waiver, petitioner wrote a letter dated October 24, 1956, to the head of the audit division in the Boston district director's office, in which he stated that he wished to withdraw the waiver. The respondent acceded to the petitioner's request, and no assessment was ever made of the just-mentioned deficiencies and additions to tax. The *83 examination of petitioners' returns which resulted in the deficiencies set forth in the above-mentioned waiver, had been made by revenue agent Leo Barnard. One of the adjustments made by agent Barnard had been to put petitioner's proprietorship on an accrual basis for 1953. Agent Barnard was subsequently transferred to another post of duty; and the examination of petitioners' returns was thereafter taken over by another revenue agent, Norman Clifford. Agent Clifford, among other things, enlarged the scope of the examination of petitioners' returns, by adding those for the taxable years 1956 and 1957; and he also eliminated the return for 1953 from his consideration. [3] Upon the basis of agent Clifford's examination, the respondent determined, among other things, that since petitioner had initiated a change from the cash to an accrual method of accounting for and reporting proprietorship income in 1954, the following adjustments were required to be made; and he gave the following explanation for his action: As a change in accounting method from cash to accrual was initiated by taxpayer in 1954, without permission, the following adjustments have been determined to be necessary under section 481(b)(4)(B) of the Internal Revenue Code of 1954: *84 1-1-54 Accounts receivable
$37,420.11
1-1-54 Inventory
19,175.50
1954 Bad debt allowed
4,240.52
$60,836.13
Less: 1-1-54 Accounts [payable]
1,087.96
Total adjustment
$59,748.17
Acting pursuant to section 481(b)(4)(B), the respondent further determined that one-tenth of the total adjustment of $59,748.17 (or $5,974.82) should be added to petitioner's proprietorship income for each of the years 1954 through 1957. During 1952, while petitioner was accounting for and reporting his proprietorship income entirely on a cash basis, petitioner performed certain work for a company known as Maynard Pulp Products, Inc. At the end of said year Maynard Pulp Products was indebted to petitioner in the amount of $2,131.31 for material and labor. After preliminary efforts by petitioner to collect the account proved unavailing, he retained the services of an attorney *85 to collect said account. The attorney likewise was unsuccessful. The Maynard company ultimately failed, and its assets were sold at public auction. The date of the sale is not shown by the record. Petitioner did not receive any payment from the proceeds of the sale of the debtor's property. Petitioner claimed a bad debt deduction of $2,131.31 on his 1954 return, in respect of the unpaid Maynard company account. Respondent, upon audit, disallowed said deduction. In 1956, petitioner engaged an accounting firm in Boston to perform accounting services for the proprietorship. Sometime in the following year 1957, accountants for the firm advised petitioner that it would be necessary to reconstruct the accounting records for the years 1953 through 1957, and that the fee for such services would be $2,500 per year, or a total of $12,500. Petitioner agreed to pay the fees thus set by the accountants. The reconstruction of the accounting records was not completed in 1957; and work thereon continued during the following years, and was completed in 1959 or 1960. Petitioner did not pay the accounting firm any amount in 1957. He did make payments to the accountants in amounts and at times, as shown *86 in the following table: Date
Payment
Aug. 21, 1959
$ 5,000
Sept. 17, 1960
5,000
June 1, 1961
1,500
June 28, 1961
1,000
Total
$12,500
Petitioner deducted $12,500 as legal and auditing expense of the proprietorship on his 1957 return. All of the other proprietorship expenses (except purchases of materials entering into cost of goods sold) deducted on said return represented amounts that had actually been paid by petitioner in that year. The respondent determined that the deduction claimed for legal and auditing expense was not allowable. During 1957, petitioner suffered a mild heart attack; and he was advised by his physician that he should take a trip and get some rest. Petitioner joined a pilgrimage tour under the auspices of the Catholic Diocese of Springfield, Massachusetts, to visit some of the Catholic shrines in France and Italy, and paid as the cost of the tour $1,533.80. About four other contractors were on the tour with petitioner. After petitioner returned home, he obtained subcontracts under prime contractors who were building churches, convents and schools in the Springfield diocese. Petitioner, on the 1957 return, deducted $1,533.80, the cost of the tour, as a business expense of his *87 proprietorship, on Schedule C of the return. The respondent disallowed said claimed deduction, on the ground that petitioner had not substantiated that it represented an ordinary and necessary expense of the proprietorship. The declaration of estimated tax which petitioners filed in respect of the taxable year 1954 was not filed within the time prescribed by law for such filing. Furthermore, 80 percent of petitioners' correct tax liability for 1954 exceeded the amount of tax shown on the declaration which petitioners filed. The respondent determined that petitioners were liable for additions to tax for late filing of declaration of estimated tax and for substantial underestimate of estimated tax, pursuant to sections 294(d)(1)(A) and 294(d)(2), I.R.C. 1939, respectively. Petitioners' failure to file their declaration of estimated tax for the year 1954 within the time prescribed by law was not due to reasonable cause. Opinion 1. Section 481(a) of the 1954 Code, as it reads following amendment thereof by the Technical Amendments Act of 1958, is as follows: SEC. 481 ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING. (a) General Rule. - In computing the taxpayer's taxable income *88 for any taxable year (referred to in this section as the "year of the change") - (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer. There is no question but that the petitioner's method of computing taxable income was changed in 1954 from that which he had used in 1953 and prior years; nor is there any question that the petitioner voluntarily initiated the change. Without going into the accounting theory underlying the necessity for the respondent's adjustments, we think it suffices to say that the petitioner does not question that they were of the type required in order to prevent the statutorily proscribed duplications and omissions, and that adjustments *89 of like character were approved in similar circumstances in Irving Falk, 37 T.C. 1078, and Fred P. Pursell, 38 T.C. 263. Indeed, the statute appears unquestionably to be applicable here and to have been correctly applied by the respondent. Petitioner argues, however, that the deficiencies in this case are not the proper ones. He claims that the deficiencies (of lesser amount for 1954 and 1955, and including the year 1953) proposed by revenue agent Barnard (but be it noted, not determined by the Commissioner) are the only proper ones assertable by the Commissioner in this case. Petitioner's argument runs somewhat as follows. The returns for 1953, 1954 and 1955 were joint returns, signed by him and his wife; and the Form 870 waiver of restrictions on assessment and collection of the deficiencies and additions to tax proposed by Barnard was signed by petitioner and his wife. But the letter wherein the waiver was sought to be revoked or withdrawn was signed only by petitioner and not his wife. The attempted revocation or withdrawal was, therefore (so the argument runs) ineffective; and hence the petitioners (and presumably the Commissioner too) are still bound by the deficiencies and *90 additions to tax mentioned in said waiver. We think the argument is without merit. The Form 870 states on its face that it is not a final closing agreement under section 7121 of the Internal Revenue Code of 1954, and does not, therefor, preclude the assertion of a deficiency or a further deficiency in the manner provided by law should it be subsequently determined that additional tax is due. Therefore, even if the respondent had accepted the waiver and acted thereon (which he did not) he would not have been barred thereby from asserting deficiencies in greater amounts than those mentioned in the waiver. Considering the case from the point of view of what did occur, we point out that, until the respondent acted upon the waiver, the petitioners were not bound thereby and they had the right to revoke it. F. B. Blansett v. United States, 181 F. Supp. 637, remanded on other issues (C.A. 8) 283 F. 2d 474. And it would seem that, upon the filing of the waiver, the respondent had an option to either accept it and act upon it by making an assessment, or to reject it and not act thereon. Until and unless acted upon by the respondent, the waiver was not binding upon either party to it. It *91 makes no difference that the letter withdrawing the waiver may have been technically defective for failure to include petitioner Lillian Sullivan's signature. For the respondent had the right, as we see it, to refuse to accept the waiver for whatever reasons he deemed sufficient, even in the absence of a revocation. The fact is that he did not accept it and act upon it; and the petitioner's contention that he and his wife and the respondent continued to be bound thereby, must be rejected. Petitioners also argue that the respondent should have utilized a larger opening inventory for 1954, in computing the proprietorship's cost of goods sold for that year. [4] Respondent accepted the opening inventory as shown by the petitioner in the 1954 return; but petitioner contends that such inventory failed to include work-in-process located at certain job sites when petitioner was performing work. The record herein however contains no evidence whatever of the amount of this work-in-process inventory. Nor did the extended cross-examination of revenue agent Clifford by petitioners' counsel reveal that any reliable evidence of such amount was ever furnished to the respondent's agents during the course *92 of their investigation. In the light of the foregoing, we sustain the respondent on this first issue. 2. The second issue relates to the respondent's disallowance of the bad debt deduction of $2,131.31 claimed by petitioner in the 1954 return in respect of the account receivable owing to him by Maynard Pulp Products, Inc. for work performed and materials furnished which would have represented taxable income if collected, but which petitioner was unable to collect. The evidence wholly fails to satisfy us that the account became worthless in 1954, rather than in 1953 or 1955, both of which years were mentioned by petitioner in his extremely unclear testimony on this point. Moreover, since said amount had never been taken into income (owing to the fact that petitioner furnished the materials and labor giving rise to the Maynard company's account receivable *93 in 1952 when petitioner was on the cash basis), it is well settled that no bad debt deduction is allowable with respect thereto. See W. L. Moody Cotton Co. v. Commissioner, (C.A. 6) 143 F. 2d 712, affirming 2 T.C. 347; and section 1.166-1(e), Income Tax Regs., providing as follows: (e) Prior inclusion in income required. Worthless debts arising from unpaid wages, salaries, fees, rents, and similar items of taxable income shall not be allowed as a deduction under section 166 unless the income such items represent has been included in the return of income for the year for which the deduction as a bad debt is claimed or for a prior taxable year. We hold that respondent correctly disallowed the bad debt deduction claimed by petitioner. 3. The third issue relates to the deductibility in 1957 as legal and auditing expense, of the fee which petitioner agreed to pay to an accounting firm for reconstructing the proprietorship's accounting records for the 5-year period 1953 through 1957. Petitioner agreed in 1957 to pay the firm $2,500 for reconstructing the accounts for each year, or a total of $12,500. The firm did not complete its work until 1959 or 1960; and petitioner did not make any *94 payment to the firm in 1957. Rather he paid the amount in a series of payments in 1959, 1960 and 1961. Section 446(a) of the 1954 Code provides that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. Our Findings of Fact show that for 1954 and 1957, petitioner employed a modified accrual method of accounting. He employed an accrual method for purchases and sales, but he employed the cash method for the other items of expense of his proprietorship. The respondent's regulations explictly sanction such a "hybrid" method. Section 1.446-1(c)(iv), Income Tax Regs., states in part: "A taxpayer using an accrual method of accounting with respect to purchases and sales may use the cash method in computing all other items of income and expense." In the circumstances of this case, considered in the light of the cited Code section and regulations, we believe that the auditing expense of the proprietorship must be accounted for and deducted in the same manner as all of the petitioner's other expenses than his purchases, that is to say, on the cash method. Since he did not pay the accounting firm *95 any amount in 1957, he is not entitled to any deduction for auditing expense in that year. We sustain the respondent on this issue. 4. The fourth issue is concerned with the expenses of the pilgrimage-tour to the religious shrines in Europe which petitioner took in 1957. The trip was suggested by petitioner's physician so that he might get a "rest." Petitioner deducted the cost of the trip as a proprietorship business expense. Among petitioner's fellow travelers were several contractors; and he claims that, upon his return home, he was able to get contracting jobs for his proprietorship as the result of the acquaintances he made with the contractors on the tour. Petitioner did not identify any job that he claimed to have secured in this manner. The cost of the tour must be regarded, we believe, as a personal expense of the petitioner. The heavily personal character which it bears in our view, is not lessened by broad, general statements regarding alleged business benefits arising therefrom. We sustain the respondent's disallowance of the deduction. 5. Finally, there is the question of petitioners' liability for the additions to tax for late filing of their declaration of estimated *96 tax for 1954 and substantial under-estimate of estimated tax, which respondent determined under sections 294(d)(1)(A) and 294(d)(2) of the 1939 Code. [5] The only defense presented is petitioner's testimony that the returns were always prepared by an accountant, presumably implying that the late filing was the accountant's fault rather than the petitioners. Assuming that this testimony is intended to cover the declarations of estimated tax as well as the returns, it fails to furnish that reasonable cause which is a defense against the additions to tax imposed under section 294(d)(1)(A). [6] *97 See and compare Jane U. Elliott, 40 T.C. 304, 315, where we held that the bare showing of reliance upon an accountant to prepare returns was not sufficient to establish reasonable cause for late filing of returns. The respondent is sustained as to this issue. Decision will be entered for the respondent. Footnotes
1. Inasmuch as Lillian Sullivan is a party to the present case solely because she joined in the filing of a joint return with her husband, the term "petitioner" in the singular will hereinafter have reference to the husband.↩
2. Section 6654 of the 1954 Code, "Failure by Individual to Pay Estimated Income Tax," provides in subsection (h) thereof: "This section shall apply only with respect to taxable years beginning after December 31, 1954; and section 294(d) of the Internal Revenue Code of 1939↩ shall continue in force with respect to taxable years beginning before January 1, 1955."
*. Imposed under section 294(d)(1)(A) and (d)(2), I.R.C. 1939↩.
3. In the petition filed herein, petitioners set forth certain allegations pertaining to their income tax liability for 1953, although no deficiency has been determined with respect thereto. The respondent moved to dismiss for lack of jurisdiction insofar as 1953 was concerned. This Court, by order dated June 21, 1961, granted the respondent's motion.↩
4. Accounting-wise, an opening inventory represents unexpired costs carried forward from the preceding accounting period, to be applied against the sales income of the period to which they are carried, to the extent the articles in the inventory are sold in said period. A larger opening inventory would thus tend to reduce taxable income.↩
5. Commissioner v. Acker, 361 U.S. 87, holding that the "double penalties" are improper, in a case where no declaration has been filed by the taxpayer, does not preclude their imposition where (as here) a declaration has been filed after the time prescribed by law. See Rose S. Harkins, 33 T.C. 365↩. 6. Reasonable cause is no defense to the imposition of additions to tax for substantial underestimate, under section 294(d)(2). H. R. Smith, 20 T.C. 663↩.